[Civ. No. 33414. Second Dist., Div. Three. Sept. 11, 1969.]

PHILIP B. WRIGHT et al., Plaintiffs and Appellants, v. MARGARET ROYSTER WRIGHT, as Executrix, etc., et al., Defendants and Respondents.

Zetterberg & George and Stephen I. Zetterberg for Plaintiffs and Appellants.

Karl F. Geiser for Defendants and Respondents.

THE COURT.—This appeal is from a summary judgment dismissing a complaint filed by appellants to recover from respondent, Margaret Royster Wright, as executrix of the will of her deceased husband, Gilbert M. Wright, the sum of $10,000. Appellants, Leta B. Deery and Philip B. Wright, are the first wife of Gilbert and the adult son of Gilbert and Leta. Respondent, Margaret, was Gilbert's second wife. The other respondent is Barbara Wright Kalckar, the adult daughter of Gilbert and Leta and the sister of Philip.

The action before us is based on a paragraph in a property settlement agreement made in November 1936 between Leta and Gilbert in contemplation of their divorce the following year. At the time Philip and Barbara were 12 and 10 years of age. The paragraph reads as follows:

"SIXTH: That second party [Gilbert] shall keep in force his present life insurance policies in the aggregate principal sum of ten thousand dollars ($10,000.00), in one of which policies the said children [Philip and Barbara] are beneficiaries and in one of which first party [Leta] is the beneficiary, and shall pay all premiums on said policies prior to delinquency and shall make no change in the beneficiary under said respective policies."[1]

Contrary to his promise to keep in force the two life insurance policies in the total face amount of $10,000 covered by the quoted paragraph, Gilbert, long before his death in April 1966, had cashed out one policy and surrendered the other for cancellation. Following Margaret's appointment and qualification as executrix of Gilbert's will, appellants duly filed claims against Gilbert's estate in the amount of $10,000. Margaret rejected both claims; this suit followed.

The trial court's order granting respondents' motion to dismiss appellants' complaint refers to its memorandum opinion for a fuller statement of its reasons for so doing. In the opinion the trial court concedes that the quoted paragraph in the property settlement agreement does not contain any express termination date for the obligations of Gilbert created by the paragraph. It concludes, however, that under Civil Code section 1657 these obligations were intended to last only for a reasonable time.[2] It then holds that such reasonable times were the periods of the minorities of Philip and Barbara.

---

[1] As will be pointed out, the statement in the paragraph as to who were then the beneficiaries of Gilbert's life insurance policies is erroneous.

[2] This section actually deals with the time for the performance of an act under a contract rather than with the duration of a contractual obligation.

These periods expired in 1945 and 1947, about 20 years before Gilbert's death.

 The position of the trial court in this case does not differ essentially from that of respondents. They contended before the trial court that Gilbert's life insurance obligations were intended merely to secure his support obligations under the agreement to Leta and their children and terminated when those obligations did. They further asserted that Leta, by consenting in September 1937 to the substitution of the children for herself as beneficiaries under one of these policies, relinquished any interest which she might have acquired under the agreement to any of Gilbert's life insurance.

The divorce of Gilbert and Leta apparently occurred in September 1937. At that time Gilbert, with the consent of Leta as to one policy and perhaps without her consent as to the other, substituted Philip and Barbara for her as the beneficiaries of both policies.[3] A little over two years later, however, he surrendered one of the policies and in 1960 cashed in the other. Meantime, in 1953, acting alone, he had changed the beneficiaries designated in this policy from Philip and Barbara to Margaret, with Philip and Barbara remaining as only contingent beneficiaries.

Gilbert married Margaret in December 1937. Leta remarried in November 1945. As previously indicated, Philip reached majority in 1945 and Barbara in 1947.

 Since there is no dispute between the parties regarding the foregoing facts, we are not bound by the trial court's interpretation of the paragraph in dispute, but we may reject its interpretation only if we determine it to be erroneous. (See *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

 Appellants contend that the intention of Gilbert and Leta was to provide by means of the paragraph at issue an insurance estate of $10,000 for her and their children upon the death of Gilbert. Respondents assert that their intention instead was merely to secure the performance of Gilbert's support obligations undertaken in the agreement and that when these expired in 1945 and 1947 the incidental security

---

[3] In his affidavit in support of appellants' motion for a summary judgment appellants' counsel averred that the change in beneficiaries on the last mentioned policy was made by Leta. But the letter from the insurer to respondents' counsel, which is attached as an exhibit to this affidavit, does not indicate who made this change in beneficiaries and no affidavit by Leta herself was filed in the proceedings below.

obligations of the quoted paragraph likewise expired. (See Civ. Code, § 3540.)

Neither of these intentions was expressed in the agreement. Both the paragraph in dispute and the agreement as a whole are completely silent regarding the provision of a life insurance estate for Leta and the children. Similarly, although the duration of Gilbert's support obligations under the agreement are expressly limited in paragraph "FOURTH" and "FIFTH" of the agreement, no limitation whatever upon the duration of his life insurance obligations under paragraph "SIXTH" appears. The conclusion of the trial court that reasonable periods of time for these otherwise temporally unlimited obligations would be the periods expressed for the duration of the support obligations themselves is obviously based upon its further conclusion that Gilbert's promises to keep the life insurance policies in force, etc., were made solely to secure the performance of his obligations under the agreement to support his children and his wife. If, on the other hand, appellants' view of the meaning of paragraph "SIXTH" is adopted, the duration of Gilbert's obligations under the paragraph would be until his death.

Gilbert's conduct subsequent to making Philip and Barbara the beneficiaries of both $5,000 policies in September 1937, was, however, inconsistent with both the meanings of paragraph "SIXTH" urged by the parties. He surrendered the one policy in 1939 before either of his support obligations had expired. On the other hand, he kept neither policy in force until his death.

The agreement in question was designed to settle and dispose of the property rights of Gilbert and Leta and to provide for the support of Leta and the two minor children. The two life insurance policies at issue, both of which had been taken out during the marriage, were presumably community property and subject to division under the agreement between Gilbert and Leta. (See Civ. Code, § 164; 4 Witkin, Summary of Cal. Law (7th ed. 1960) p. 2722.) But they were not disposed of in the agreement other than by paragraph "SIXTH"[4] Under this paragraph Gilbert remained the owner of both policies, but he promised to keep them in force and good standing and not to change their beneficiaries from Leta in the case of the one policy and from the two minor children in

---

[4]Respondents' counsel has suggested that the reason for this was their apparently small cash values at the time the agreement was made in November 1936.

the case of the other. This paragraph appears in the agreement immediately following the support provisions.

The question before us is how long was Gilbert required under the paragraph to keep the two policies in force without changing their beneficiaries. Appellants argue that our determination of this question is controlled by *Waxman* v. *Citizens Nat. Trust & Sav. Bank.*, 123 Cal.App.2d 145 [266 P.2d 48], an earlier decision of this court. In *Waxman* this court held that a married daughter was entitled to recover $5,000 from her father's estate. This was the face amount of the life insurance policy which he had agreed in the property settlement agreement with her mother to maintain in force for the daughter. This agreement had been made preparatory to the divorce of the mother and father some 19 years before his death. The rationale of this decision was that through the applicable provisions of the agreement the daughter had been made a donee beneficiary of the agreement and had been vested with an equitable interest in the life insurance policy which could not be defeated without her consent. (*Waxman,* v. *Citizens Nat. Trust & Sav. Bank, supra,* at pp. 148-149.)

Respondents contend that *Waxman* is distinguishable because there: (1) the decedent promised to assign, transfer and deliver the insurance in trust for the daughter to his then wife and did subsequently deliver the policy to this former wife; (2) his promise was to maintain the daughter as an "irrevocable" beneficiary of his insurance; (3) the consideration for his promise was the settlement of the property rights of the spouses; and (4) his specific agreement was to maintain the insurance in force "until his death."

We do not find these claimed factual differences persuasive. The mechanics of how the insurance was to be maintained seems irrelevant. Likewise, the consideration for the decedent's promises in both cases appears to have been the same. Further their promises not to change beneficiaries seem essentially equivalent. Finally, an examination of the record in *Waxman* discloses that nowhere in that agreement did the decedent expressly promise to keep his life insurance in force "until his death."[5]

Respondents further contend that the case of *Cooper* v. *Cooper*, 49 Cal.2d 30 [314 P.2d 1], is decisive of the question before us. We disagree. In *Cooper* our Supreme Court held

---

[5]This duration of the decedent's obligations set forth in the court's opinion appears to have been implied by the court: (*Waxman* v. *Citizens Nat. Trust & Sav. Bank* at p. 148.)

that the divorce decree between the parties to the property settlement agreement there at issue superseded the agreement itself. No such claim is advanced in this case. Furthermore, in *Cooper* the insurance trust provisions of the agreement were not self-executing and had not been carried out. Finally, their duration was expressly limited to the minorty of the younger of the two children involved. (*Cooper* v. *Cooper, supra,* at pp. 32-36.)

We believe that the trial court's determination of the duration of Gilbert's obligations under paragraph ''SIXTH'' of the agreement was erroneous. We interpret the paragraph to mean that the obligations imposed upon Gilbert by it lasted until his death. Consequently under *Waxman, supra,* the summary judgment must be reversed.

The judgment is reversed.

A petition for a rehearing was denied October 7, 1969, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied November 5, 1969.