[Civ. No. 9704. Fourth Dist., Div. One. Mar. 13, 1970.]

BERNICE H. BURGART, Plaintiff and Appellant, v.
ELIZABETH M. BURGART, Defendant and Respondent.

410

---

**COUNSEL**

Dannemeyer & Tuohey and William E. Dannemeyer for Plaintiff and Appellant.

Cooksey, Schumacher, Coleman & Minyard and J. T. Schumacher for Defendant and Respondent.

## Opinion

**BROWN (Gerald), P. J.**—The widow (Bernice) of William F. Burgart and his previous wife (Elizabeth) dispute who should receive the death benefits of two insurance policies. From a judgment favoring the former wife, Bernice appeals.

Hughes Aircraft Company, employing Mr. Burgart, provided its employees with term life insurance through Pacific Mutual Life Insurance Company. The amount of insurance payable on the death of an employee varied with the amount of his salary. In 1957, when Mr. Burgart was first insured his salary ranged from $125 to $149 per week. This entitled him to $7,500 death benefit coverage. Burgart named Elizabeth, to whom he was then married, as beneficiary.

In 1962 Burgart and Elizabeth came to a parting of the ways. They entered into a property settlement agreement providing in part: "Husband does hereby covenant and agree to continue and maintain in effect without change in terms or coverage change in beneficiaries, or lapse, the policies of insurance described hereinabove in Sub-paragraphs (1) and (m) of Paragraph 3 hereof, for so long as he is eligible for such insurance . . . ."

The insurance policies referred to in the property settlement agreement were the Pacific Mutual policy with salary oriented coverage and another policy provided by Hughes Aircraft with Aetna Life & Casualty Company for a group annuity plan. Under the Aetna policy death benefits were payment in the amount of employee contributions plus accumulated interest on the contributions. The parties have stipulated the amount of Burgart's contributions plus interest as of the date of his divorce was $1,939.27 and the amount after his divorce to the date of his death $2,439.49.

At the time of his divorce in 1962, Mr. Burgart had received salary increases which entitled him to $15,000 death benefit coverage under the Pacific Mutual policy. Following his divorce, Burgart remarried and, in violation of the property settlement agreement, changed the provisions of the Pacific Mutual and Aetna policies to name his new wife, Bernice, as beneficiary. When he died Burgart had received additional salary increases which entitled him to $30,000 death benefit coverage under the Pacific Mutual policy.

Bernice brought this action to determine her entitlement under the Pacific Mutual policy, the Aetna policy and a third policy which is not involved in this appeal. The trial court ruled Elizabeth was entitled to the entire proceeds of both the Pacific Mutual policy ($30,000) and the Aetna policy ($4,378.76).

Bernice contends Elizabeth should have received only the amount of

death benefit which was available under the Pacific Mutual policy on the date of the property settlement agreement ($15,000), and the remainder of the $30,000 payable on Mr. Burgart's death should go to her as his widow. As to the Aetna policy, Bernice contends she should be entitled to the amount her husband contributed following his divorce from Elizabeth, together with the accumulated interest on that amount.

Bernice does not question Elizabeth's entitlement to proceeds under the two policies as an equitable beneficiary where Mr. Burgart breached his agreement not to change her as designated beneficiary on the policies. (See *Shoudy* v. *Shoudy*, 55 Cal.App. 344 [203 P. 433]; *Chilwell* v. *Chilwell*, 40 Cal.App.2d 550 [105 P.2d 122].)

Bernice argues the property settlement agreement did not contemplate the increases in death benefits which would accrue under the Pacific Mutual policy. She argues the increase in coverage, from $15,000 to $30,000, was in the nature of after-acquired property and fell under provisions of the property settlement agreement by which each party waived any right to the other's after-acquired property. The trial court found Elizabeth had a vested right in the entire proceeds of the policies determined on the date of Burgart's death rather than on the date of the property settlement agreement.

■ The court's finding is supported by the terms of the agreement and by evidence at the trial. Mr. Burgart agreed not to provide a set amount of life insurance but to maintain the specific policies without changing their coverage. The Pacific Mutual coverage was not for a set amount but was for the variable amount depending upon income. Elizabeth testified she knew the benefits under the Pacific Mutual policy would be proportionate to Mr. Burgart's salary. We must assume, absent contrary evidence, Mr. Burgart knew of the benefit escalation clause and contracted with reference to it. At the time he executed the property settlement agreement Mr. Burgart had already received two increases in insurance coverage based upon increases in his salary.

■ Because the premiums on the two policies were paid from the community property she shared with Mr. Burgart, Bernice theorizes the payments constituted gifts of the community which could not be made without her written consent (Civ. Code, § 172). The fallacy of Bernice's argument is payment of her husband's obligations to his first wife did not constitute a gift of moneys. The community property was subject to the pre-existing debts of the husband, including obligations owed the first wife. (*Weinberg* v. *Weinberg*, 67 Cal.2d 557, 562 [63 Cal.Rptr. 13, 432 P.2d 709].) Elizabeth gave consideration under the property settlement agreement for Mr. Burgart's promise to maintain the insurance policies. To

sustain Bernice's contention would be to allow a divorced husband to halve his contractual or judgment-imposed continuing obligations to his ex-wife by the simple expedient of remarriage. The second wife could then recapture her share of "gifts" made out of the community to pay support or other obligations to the first wife.

Because the community property of Burgart's second marriage was subject to payment of his contractual obligation to maintain the insurance policies, payment of the premiums out of the community did not constitute payment of consideration for the policies by Bernice so as to entitle her to share in the policies. The consideration for the payments moved from Elizabeth through the property settlement agreement.

■ Bernice contends the court erroneously allowed Elizabeth to testify what her understanding was regarding what she would receive under the two policies. She stated she understood she would receive the increased amount on Burgart's death. The court took under submission a motion to strike the testimony. The court did not rule on the submitted motion as it was not asked to do so. We will not assume the court would have ruled erroneously or the court considered improper evidence absent some showing to the contrary. Moreover, even assuming error, there could be no prejudice. Elizabeth's testimony merely restated as an "understanding" what she already was contending in her pleadings.

Judgment affirmed.

Whelan, J., and Ault, J., concurred.

A petition for a rehearing was denied March 30, 1970, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1970.